UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGIS HILLOW and the<br>REGIS HILLOW LIVING TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>E*TRADE SECURITIES, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 4:22-CV-145-JAR<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This matter is before the Court on E*Trade Securities, LLC's ("E*Trade") Motion to Stay Proceedings and Compel Arbitration. (Doc. 9). The motion is fully briefed and ready for disposition. For the reasons discussed below, the motion will be granted.

**I.    BACKGROUND**

On August 20, 2021, Plaintiffs Regis Hillow ("Hillow") and the Regis Hillow Living Trust (the "Trust") filed an action against E*Trade in Missouri state court. (Doc. 1 at ¶ 1). E*Trade timely removed the action to this Court on February 7, 2022 because Plaintiffs' Petition raised a federal question under the Securities Exchange Act. (*Id.* at ¶¶ 9-18). E*Trade now seeks to compel arbitration of Plaintiffs' claims pursuant to the parties' contractual agreements and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA").

Hillow is a retired businessman and sophisticated securities trader who has traded at high volumes for approximately 15 years. E*Trade is a Financial Industry Regulatory Authority ("FINRA") registered online broker-dealer. Plaintiffs began trading on E*Trade's securities trading platform (the "Platform") in early 2018. Plaintiffs indicate that the account at issue held

1

over $3 million in March 2021, could trade on far more than this amount through margin lending, and the volume of account trading regularly exceeds $100 million per year. (Doc. 4 at ¶¶ 5-6).

Plaintiffs claim that the Platform failed to accurately reflect the "cost basis" of Plaintiffs' positions because the Platform did not properly incorporate "wash sale" data. It is unnecessary at this juncture of the case to delve further into Plaintiffs' arguments regarding alleged inaccuracies on the Platform. Plaintiffs bring claims for Fraudulent Misrepresentation (Count I), Negligent Misrepresentation (Count II), Fraud (Count III), Securities Fraud and Violation of 15 U.S.C. § 78j (Count IV), and Negligence (Count V). Plaintiffs seek directly attributable damages of at least $3.5 million and market adjusted damages of over $15 million due to trading on inaccurate cost basis information. E*Trade now seeks to compel arbitration on the grounds that Hillow and the Trust consented to binding arbitration upon opening the relevant account. (Docs. 9-10).

Hillow is a Trustee for the Trust and "able to act on its behalf," though there may be additional Trustees. (Doc. 15 at 11, ¶ 6). In December 2017, Hillow opened two brokerage accounts with E*Trade, one of which was closed just days later (the "Closed Account"). (*Id.* at ¶ 2). Hillow contends that the other brokerage account, ending in *7009 (the "Account"), was an individual account opened in his personal name and listing his Social Security Number. (*Id.* at ¶ 3). Shortly after opening the Account, Hillow contacted his E*Trade representative and changed the Account's name from his own to "Regis Hillow Living Trust UAD 01/29/98." (*Id.* at ¶ 4). Despite this change, Hillow insists that he acted in a strictly personal capacity and did not execute an E*Trade Account Application in his role as Trustee of the Trust. (*Id.* at ¶ 8).

E*Trade has offered a Declaration by Erik Renga, its Executive Director of Operations. (Doc. 10-1). Renga's Declaration provides that Hillow opened an account for the Trust on December 12, 2017 and submitted an Account Application in connection with the opening. (*Id.* at

2

¶ 7). It appears clear that Hillow selected "Trust" when asked to identify the "[t]ype of account" in the Account Application. (*Id.* at 5). When individuals submitted an Account Application with E*Trade at this time, they were also required to accept the E*Trade Customer Agreement (the "Agreement"), which E*Trade made available for review via hyperlink. (*Id.* at ¶ 15). In submitting the Account Application, Hillow was required to "acknowledge that I have received, read, and agree to be bound by the terms and conditions as currently set forth in the [Agreement]." (*Id.* at 6). This page also included the following language in all capital letters: "I UNDERSTAND THAT THIS ACCOUNT IS GOVERNED BY THE PREDISPUTE ARBITRATION CLAUSE IN SECTION 12 OF THE E*TRADE CUSTOMER AGREEMENT." (*Id.*). It appears that the term "E*TRADE CUSTOMER AGREEMENT" is hyperlinked to the Agreement.[1]

At the time Hillow completed the Account Application, the Agreement contained § 12 titled "Arbitration Agreement and Disclosures." (*Id.* at 25). This section of the Agreement included the following bolded language (hereinafter the "Arbitration Agreement"):

> **The Account Holder agrees to resolve by binding arbitration any controversy that may arise between E*TRADE and the Account Holder relating in any way to the Account Holder's relationship with E*TRADE, any Account held with E*TRADE, or any service provided by E*TRADE to the Account Holder. This arbitration agreement includes any controversy involving transactions of any kind made on the Account Holder's behalf by or through E*TRADE, or the performance, construction, or breach of this Customer Agreement or any other written agreement between E*TRADE and the Account Holder. Such arbitration will be conducted in accordance with the rules then in effect of FINRA unless the rules of another self-regulatory organization to which E*TRADE is subject mandate arbitration before that organization . . . . The Account Holder makes this arbitration agreement on behalf of itself and the Account Holder's heirs, administrators, representatives, executors, successors, assigns and together with all other persons claiming a legal or beneficial interest in the Account**.

---

[1] The Court notes that Plaintiffs have not alleged that the Agreement was not actually accepted by Hillow or properly incorporated into the Account Application. *See Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021) ("[C]ourts rarely find problems with clickwrap agreements."); *Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. Ct. App. 2009) ("Courts routinely enforce clickwraps."). It appears clear to the Court, and undisputed by Plaintiffs, that Hillow accepted the incorporated Agreement.

E*Trade has further supplemented the record with a Declaration by Joseph Kusmisz, a Financial Consultant who communicated with Hillow during the account opening process. (Doc. 19). According to Kusmisz, Hillow called E*Trade on December 7, 2017 and asked to delete the Closed Account which Hillow had then just opened. (*Id.* at ¶ 6). Kusmisz informed Hillow he would need to print, complete, and sign a Trust Account Application in order to open the Account. (*Id.*). Hillow proceeded to fax E*Trade a 12-page document entitled "Trust or Conservatorship Account Application," a copy of which E*Trade has provided (the "Trust Application"). (*Id.* at 3-14).

In the Trust Application, Hillow again chose "Trust" as the Account Type, listed himself as the Trustee, and authorized that he had "express legal authority to open, maintain, and transact business in the following types of accounts, each of which is governed by the E*TRADE Securities Customer Agreement." (*Id.* at 4). The Trust Application includes the following language appearing exactly as stated herein: "**I UNDERSTAND THAT THIS ACCOUNT IS GOVERNED BY A PREDISPUTE ARBITRATION CLAUSE. I acknowledge that I have received and read a copy of the E*TRADE SECURITIES CUSTOMER AGREMEENT which contains a pre-dispute Arbitration Agreement at Section 12.**" (*Id.* at 10). The Trust Application includes virtually identical language two other times, including at the very bottom just before Hillow's signature. (*Id.* at 11, 14). The Court will generally refer to this language in the Trust Application and the similar notice included in the Account Application and Agreement as the "Arbitration Notices." Finally, Hillow expressly certified under penalty of perjury that "[t]here are no other Trustees of the Trust" other than himself and he had "the power under the Trust Agreement to enter into transactions for the purchase and sale of securities and other investments." (*Id.* at 12).

4

Plaintiffs have not offered any specific objections to the validity of these key documents, and Hillow admits that he is "able to act on [the Trust's] behalf." (Doc. 15 at 11, ¶ 6).[2] Hillow further acknowledges that he contacted Lusmisz to change the account from being in his name to that of the Trust. (*Id.* at ¶ 4). But Hillow has since made two sworn Declarations which appear to squarely contradict the documents submitted by E*Trade. First, Hillow now states that while he can act on the Trust's behalf, there are additional Trustees. (*Id.* at ¶ 6). Second, Hillow's Declaration includes the following assertion: "At no time did I execute an E*Trade Account Application in my capacity as a Trustee of the 'Regis Hillow Living Trust.'" (*Id.* at ¶ 8). In analyzing the parties' legal arguments, the Court will consider whether these inconsistencies establish genuine disputes of material fact.

## II.  LEGAL STANDARD

"Arbitration is a matter of contract, meaning that disputes are arbitrable only to the extent an agreement between the parties says so." *Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021) (citations omitted). The FAA "reflects a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Neither party disputes that the agreements at issue in this litigation are governed by the FAA, except to the extent Plaintiffs argue that FINRA's rules control. When ruling on a motion to compel arbitration, this Court limits its analysis to "1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement

---

[2] E*Trade sought to file the Kusmisz Declaration and Trust Application after completion of briefing on the instant motion. (Doc. 17). On April 11, 2022, the Court granted E*Trade's Motion for Leave to Supplement the Record for its Pending Motion to Stay Proceedings and Compel Arbitration. (Doc. 18). The Court found that the supplemental filing "offers pertinent information at this early stage of litigation and E*Trade promptly sought to supplement the record." (*Id.* at 1). The Court provided Plaintiffs an opportunity to file any supplemental briefing within five days of the Order, but Plaintiffs declined to offer any response. (*Id.* at 2).

5

applies to the dispute at hand, i.e., whether the dispute *falls within the scope* of the arbitration agreement." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (emphasis in original). Considering the strong policy favoring arbitration, doubts are resolved in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-39 (1985).

The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. "But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment." *Nebraska Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741-42 (8th Cir. 2014). Such treatment is particularly appropriate here where both parties have filed exhibits and relied on matters outside the pleadings. *See id.* (holding summary judgment standard should have been used because parties relied on matters outside the pleadings). Per the FAA, moreover, this Court must "summarily proceed to trial" if the "making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue." 9 U.S.C. § 4. Accordingly, the Court must determine if the record reveals a material issue of fact on whether the parties had an agreement to arbitrate. *Foster*, 15 F.4th at 862. If the Court determines that Plaintiffs' claims are arbitrable, it must stay this litigation pursuant to 9 U.S.C. § 3.

### III. ANALYSIS

Plaintiffs raise two overarching arguments in opposition to E*Trade's motion. First, Plaintiffs contend that the Arbitration Agreement is unenforceable because E*Trade failed to comply with FINRA rules regarding predispute arbitration provisions. The Court will address this question first because it presents a threshold issue for compelling arbitration against either Hillow or the Trust. Second, the Trust contends that it never accepted the Agreement and therefore did not consent to the Arbitration Agreement.

FINRA Rules

FINRA regulates the financial industry in its role as a self-regulatory organization created under the Securities Exchange Act. *Principal Sec., Inc. v. Agarwal*, 23 F.4th 1080, 1084 (8th Cir. 2022) (citation omitted). FINRA "issues guidance on industry practices" but also "has the authority to pass rules with the force of law." *Luis v. RBC Cap. Markets*, 984 F.3d 575, 577 (8th Cir. 2020) (internal quotation omitted). FINRA Rule 2268(b)(1) provides that any applicable agreement containing a predispute arbitration clause shall include "a highlighted statement immediately preceding any signature line or other place for indicating agreement that states that the agreement contains a predispute arbitration clause. The statement shall also indicate at what page and paragraph the arbitration clause is located." FINRA Rules 2268(b)(2) and 2268(c)(1), meanwhile, impose requirements on the FINRA member to provide the customer with a copy of the agreement containing any predispute arbitration clause. The Arbitration Notices do not appear to include the page and paragraph of the Arbitration Agreement, though they do identify the section. Plaintiffs also allege that E*Trade failed to comply with the notice requirements of Rules 2268(b)(2) and 2268(c)(1) by not providing Plaintiffs copies of the Agreement. (Doc. 15 at 8-9). The question before the Court is whether any failure by E*Trade to comply with these FINRA rules renders the Arbitration Agreement unenforceable.

Plaintiffs do not cite a single case in support of the proposition that the Arbitration Agreement is "fatally flawed" if E*Trade violated FINRA Rule 2268. (*Id.* at 8). E*Trade directs the Court's attention to *Singh v. Interactive Brokers LLC*, 219 F. Supp. 3d 549 (E.D. Va. 2016). In *Singh*, the court addressed a virtually identical issue. The customers claimed that the broker breached the Securities Exchange Act in the course of providing brokerage services, and the broker sought to compel arbitration pursuant to the parties' agreements. The customers had

7

submitted a Joint Account Application and Partnership Account Application which "contain[ed] highly conspicuous warnings about the incorporated Customer Agreement in all-capitalized and bolded text." *Id.* at 558. But the warnings did not include certain language explicitly required by FINRA Rule 2268, nor did they identify the page and paragraph at which the arbitration clause was located. *Id.* at 559. After careful analysis of applicable precedent, the *Singh* court concluded that the broker's failure to comply with FINRA Rule 2268 did not invalidate the arbitration agreements, and FINRA rules could not trump the clear mandate of the FAA.

  This Court finds the *Singh* holding very persuasive and agrees with its analysis. It appears clear to the Court that Hillow (and arguably the Trust, as discussed further below) received multiple conspicuous warnings – either in all capital letters, bolded, or both – informing him of the Arbitration Agreement within the Agreement. The Court notes that Hillow represents himself as an extremely sophisticated investor with extensive experience trading in substantial quantities of securities. *See Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 751 (8th Cir. 1986) ("[T]he parties here, both sophisticated in the realms of business and law, can be presumed to have been well versed in the consequences of their decision to resolve disputes in this manner."). Plaintiffs never suggest that the Arbitration Notices and Arbitration Agreement would fail to satisfy the standard requirements for arbitration provisions under the FAA and Missouri contract law if the FINRA rules were not at issue. Nor do Plaintiffs argue that the instant dispute falls outside the scope of the Arbitration Agreement. Accordingly, Plaintiffs' only claim on this issue is that the FINRA rules trump the FAA.

  The Supreme Court has repeatedly held that the FAA establishes a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 2 of the FAA requires that courts "enforce arbitration agreements according to

8

their terms." *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013) (citation omitted). For another statute to override the FAA's mandate, there must be a contrary congressional command which is "discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see also CompuCredit Corp. v. Greenwood*, 566 U.S. 95, 98 (2012) ("[E]ven when federal statutory claims are at issue," the FAA's mandate can only be "overridden by a contrary congressional command.").

  Plaintiffs have not demonstrated that FINRA Rule 2268 constitutes a contrary congressional command. The Supreme Court has recognized that when Congress restricts the use of arbitration, it "has done so with [ ] clarity." *CompuCredit Corp.*, 565 U.S. at 103. Plaintiffs have not identified any text, legislative history, or inherent conflict suggesting that Congress or FINRA intended to override the FAA in enacting Rule 2268. *See Singh*, 219 F. Supp. 3d at 560 (citation omitted) ("FINRA Rules do not qualify as a 'contrary congressional command' for these purposes."). In fact, the FINRA Rules appear to encourage arbitration and provide customers the authority to compel arbitration in disputes with broker members. *See Luis*, 984 F.3d at 578 (discussing FINRA Rule 12200). Even the FINRA Disciplinary Panel recognizes "[r]ules that override an agreement to arbitrate and allow a party to an arbitration agreement to avoid arbitration represent the kind of 'hostility' to arbitration that the Supreme Court has repeatedly found inappropriate and unenforceable under the FAA." *Dep't of Enf't v. Charles Schwab & Co., Inc.*, No. 2011029760201, 2013 WL 1463100, at *5 (FINRA Feb. 21, 2013). The Court also notes that FINRA arbitrators are fully capable of rendering a proper decision based on FINRA's rules after assessing the relationship between Rule 2268 and the FAA. *See Charles Schwab & Co., Inc. v. Fin. Ind. Reg. Auth. Inc.*, 861 F. Supp. 2d 1063, 1077 (N.D. Cal. 2012)

9

("[T]he interpretation of FINRA Rule 2268(d) and the [Securities] Exchange Act is squarely within the expertise of FINRA.").

In these circumstances, this Court cannot say that FINRA's rules establish a contrary congressional command rendering an otherwise consensual arbitration agreement unenforceable. The instant dispute falls within the scope of the valid and enforceable Arbitration Agreement which Hillow formally consented to in the process of opening the Account. Hillow received multiple clear and conspicuous Arbitration Notices informing him of the Arbitration Agreement. Plaintiffs' argument regarding FINRA Rule 2268 presents no material factual disputes as it concerns a pure question of law.[3] Any claims by Hillow in his personal capacity are subject to binding arbitration pursuant to the Arbitration Agreement. The only remaining question is whether the Arbitration Agreement also binds the Trust.

Binding the Trust

Plaintiffs argue that Hillow did not consent to arbitration on behalf of the Trust. The Eighth Circuit has consistently held that "[a] party who has not agreed to arbitrate a dispute cannot be forced to do so." *Northport Health Servs. of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (citation omitted). Consistent with the parties' briefing and applicable precedent, this Court applies Missouri law in determining whether the Trust is subject to the Arbitration Agreements. *See Donaldson, Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009) ("[S]tate contract law governs the threshold question of whether an enforceable arbitration exists between litigants."). Under Missouri law, a willing signatory seeking to arbitrate with a non-signatory that is unwilling must establish either "(1) incorporation by

---

[3] There is some minor disagreement over the precise content and appearance of certain Arbitration Notices. (Doc. 15 at 7). Any such dispute is immaterial because both notices identified by the parties are adequate to establish Hillow's consent to the Arbitration Agreement under the FAA and Missouri law.

10

reference; (2) assumption; (3) agency; (4) veil-piercing / alter ego; [or] (5) estoppel." *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012) (citation omitted); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotations omitted) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract."); *Cent. Tr. Bank v. Graves*, 495 S.W.3d 797, 802-03 (Mo. Ct. App. 2016). The Court notes that a "nonsignatory attempting to bind a signatory to an arbitration agreement is distinct from a signatory attempting to bind a nonsignatory." *Id.* (citation omitted).

E*Trade offers multiple responses to Plaintiffs' claim that the Trust has not consented to arbitration. First, E*Trade essentially argues that the Trust has explicitly consented because Hillow elected "Trust" as the type of account during the application process and executed the Trust Application. Second, E*Trade contends that it is protected by the Missouri Uniform Trust Code because it relied in good faith on Hillow's representation that he had power to act on behalf of the Trust. Third, E*Trade suggests that the Trust is equitably estopped from denying its consent to the Arbitration Agreement because it reaped direct benefits from trading on the Account. The Court finds these arguments persuasive and determines the Trust is bound by the Arbitration Agreement under theories of both agency and estoppel. [4]

*Agency*

The Trust Application clearly establishes the Trust's consent to binding arbitration through its agent, Hillow. The Trust Application, signed by Hillow on December 7, 2017 in his capacity as Trustee, states that "[t]here are no other Trustees of the Trust other than [Hillow]"

---

[4] E*Trade also argues that Hillow ratified the Agreement and the Trust can be bound as a third-party beneficiary. The ratification argument primarily concerns ratification by Hillow, not the Trust. The Missouri Court of Appeals has clearly held, moreover, that "[m]ere status as a third-party beneficiary, alone, is *not* sufficient to support binding an unwilling nonsignatory to an arbitration agreement." *Graves*, 495 S.W.3d at 803 (emphasis in original). The Court will prioritize consideration of the agency and estoppel issues per the Eighth Circuit's guidance in *Reid*.

and the "trust agreement explicitly authorizes [Hillow] to act individually without the approval of the other Trustees." (Doc. 19 at 12). This language falls within a section titled "Trustee Certification of Trustee Power." (*Id.*). The end of the Trust Application, just above the signature line, includes Hillow's acknowledgment that he has "**received and read a copy of the E\*TRADE SECURITIES CUSTOMER AGREEMENT which contains a pre-dispute Arbitration Agreement at Section 12.**" (*Id.* at 14). Therefore, it appears pursuant to this Arbitration Notice that the Trust should be considered a signatory to the Agreement and associated Arbitration Agreement.

Hillow essentially admits that he had actual authority to bind the Trust as its agent. An agent can bind a principal through actual authority, which "is that authority given by the principal to the agent to act on its behalf, and it requires that the principal manifest its consent to the agent's ability to bind the principal." *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health and Welfare Plan v. Bjorkedal*, 516 F.3d 719, 727 (8th Cir. 2008) (citation omitted). Under Missouri law, a "principal is responsible for its agents' acts and agreements that are within the agent's authority, whether the authority is actual or apparent." *Bluehaven Funding, LLC v. First Am. Title Ins. Co.*, No. 4:06-CV-1425 SNLJ, 2009 WL 1421207, at \*7 (E.D. Mo. May 20, 2009) (citation omitted).

In his Declaration, Hillow specifically avers that while there are additional Trustees besides him, he is "able to act on [the Trust's] behalf." (Doc. 15 at 11, ¶ 6). Plaintiffs' brief acknowledges that Hillow "may act for the Trust." (Doc. 15 at 6). The Court interprets Hillow's statement as an affirmation that he has authority as Trustee to bind the Trust to predispute arbitration. *See Greater St. Louis Const. Laborers Welfare Fund v. Hancock Demolition &*

12

*Excavation Co.*, No. 4:08-CV-509 MLM, 2009 WL 2568049, at *6 (E.D. Mo. Aug. 18, 2009) ("Evidence of implied actual authority can be derived from an agent's own testimony.").

The Trust Application, moreover, flatly contradicts Hillow's claim that "[a]t no time did [he] execute an E*Trade Account Application in [his] capacity as Trustee of the [Trust]." (*Id.* at 12, ¶ 8). Hillow's sworn declaration cannot establish a genuine dispute of material fact where E*Trade has provided the actual Trust Application signed by Hillow. As with a motion for summary judgment, a party "may not rely on allegations or denials" and instead "must substantiate [his] allegations with sufficient probative evidence that would permit a finding in [his] favor on more than mere speculation or conjecture." *Carter v. Pulaski Cty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (citation omitted); *see also Ball v. City of Lincoln*, 870 F.3d 722, 727 (8th Cir. 2017) (citation omitted) ("Even if some factual dispute exists, the movant is entitled to summary judgment if the evidence, taken as a whole, is so one-sided that a fair-minded trier of fact could not find for the nonmoving party."). In this case, Hillow's self-serving Declaration does not establish a genuine dispute of material fact where E*Trade has provided the signed Trust Application demonstrating Hillow's consent to binding arbitration on behalf of the Trust. Plaintiffs did not offer any supplemental briefing on this issue despite the Court providing Plaintiffs an opportunity to do so. (Doc. 18).

Critically, the Trust has not filed a copy of the Trust Agreement or a declaration by another Trustee stating that Hillow exceeded his authority. Plaintiffs make much of the fact that "best practices in the industry typically involve obtaining some proof of trust or other documents ensuring that the person acting as trustee has those powers." (Doc. 15 at 6). But that is entirely irrelevant in this case where Hillow admits he has authority to act on behalf of the Trust and the

13

Trust has not contradicted that assertion. It therefore appears indisputable that the Trust was a willing signatory to the Trust Application and by incorporation the Arbitration Agreement.

The Court also finds that the Trust would likely be bound to the Arbitration Agreement even if Hillow lacked actual authority to bind the Trust. Missouri has adopted the Uniform Trust Code. *See In re Stephen M. Gunter Revocable Living Trust*, 350 S.W.3d 44, 45 (Mo. Ct. App. 2011) ("The Missouri Uniform Trust Code generally applies to all trusts created before, on, or after January 1, 2005, and to all judicial proceedings concerning trusts commenced on or after that date."). Per MO. REV. STAT. § 456.10-1012(1), a "person other than a beneficiary . . . who in good faith and for value deals with a trustee, without knowledge that the trustee is exceeding or improperly exercising the trustee's powers is protected from liability as if the trustee properly exercised the power." In this case, Hillow admits that he changed the name of the Account to be in that of the Trust, and E*Trade has provided a Trust Application which includes multiple representations by Hillow that he had authority to bind the Trust. Other courts considering related sections of the Uniform Trust Code have determined that the code "give[s] trustees the power to enter into predispute arbitration agreements." *Harvey ex rel. Gladden v. Cumberland Tr. and Inv. Co.*, 532 S.W.3d 243, 259 (Tenn. 2017). MO. REV. STAT. § 456.10-1012(1) appears to require enforcement of the Arbitration Agreement against the Trust even in the event that Hillow exceeded his authority as Trustee by submitting the Trust Application.

*Estoppel*

The Trust is equitably estopped from avoiding enforcement of the Arbitration Agreement. The Missouri Supreme Court has held that "[b]y accepting benefits, a party may be estopped from questioning the existence, validity, and effect of a contract." *Dunn Indus. Grp. v. City of Sugar Creek*, 112 S.W.3d 421, 437 (Mo. banc 2003); *see also Nitro Distrib., Inc. v. Dunn*, 194

S.W.3d 339, 347 (Mo. banc 2006) (citation omitted). Missouri law specifically recognizes direct benefits estoppel, which "applies when a nonsignatory knowingly exploits the agreement containing the arbitration clause." *Reid*, 701 F.3d at 846. Under this theory, a party may become bound to an agreement "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *G.W. Foods, Inc. Health, Welfare, and Benefits Plan v. WH Admins., Inc.*, No. 6:17-CV-3380 SRB, 2018 WL 3414323, at *5 (W.D. Mo. May 17, 2018) (quoting *Noble Drilling Servs. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010)).

Both forms of direct benefits estoppel identified by the Fifth Circuit in *Noble Drilling Services* and recognized by the Eighth Circuit in *Reid* apply here. First, the Trust knowingly benefitted from the Agreement by extensively trading on the Platform and obtaining margin loans from E*Trade. Plaintiffs apparently claim that Hillow merely opened accounts and executed the Arbitration Agreement in his personal capacity. But Plaintiffs also allege that the Trust "was making tens of millions of dollars in trades, making extensive use of margin loans from E*Trade." (Doc. 15 at 6). The Petition underlying this case states that Plaintiffs, which includes the Trust, relied on the Platform to "make voluminous stock trades" and suffered substantial damages as a result of E*Trade's alleged negligence and misrepresentations. (¶¶ 41, 55). Hillow admits that he called E*Trade "to change the account from one in my individual name[] to one in the name of the [Trust]." (Doc. 15 at 11, ¶ 4). The Court also notes that the Arbitration Agreement specifically binds Hillow as well as "all other persons claiming a legal or beneficial interest in the Account." (Doc. 10-1 at 25). Plaintiffs essentially admit that the Trust had an interest in the Account since the Petition alleges that the Trust traded on the Platform and suffered damages due to E*Trade's negligence.

15

The Trust's trading on the Platform, moreover, is not a "mere indirect benefit." *Nitro Distrib., Inc.*, 194 S.W.3d at 348. The Trust directly benefitted from the Agreement because Hillow could not have traded substantial securities in the Trust's name without having consented to E*Trade's proposed terms. *See Netco, Inc. v. Dunn*, 194 S.W.3d 353, 360 (Mo. banc 2006) (applying estoppel theory to enforce arbitration agreement where plaintiff received benefits of the contract). The benefits to the Trust "flow directly from the [A]greement." *Phoenix Co., Inc. v. Abrahamsen*, 05-CV-4894, 2006 WL 2847812, at *6 (S.D.N.Y. Sept. 28, 2006).

In *Singh*, the court considered a similar issue and held that the plaintiffs' "reliance on and receipt of benefits from their contract with [the broker] estops them from repudiating the arbitration clause contained in that contract." *Singh*, 219 F. Supp. 3d at 557. This analysis is entirely consistent with Missouri law and applicable to the circumstances at hand. This Court cannot permit the Trust to "assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations." *Dubail v. Med. West Bldg. Corp.*, 372 S.W.2d 128, 132 (Mo. 1963) (citation omitted). Even if Hillow lacked actual or apparent authority to accept the Arbitration Agreement on behalf of the Trust, the Trust is equitably estopped from denying the Arbitration Agreement's effect. *See Blaustein v. Huete*, 449 F. App'x 347, 350 (5th Cir. 2011) (citation omitted) ("[Direct benefits estoppel] applies to non-signatories who, during the life of the contract, have embraced the contract . . . but then . . . attempt to repudiate the arbitration clause.").

Second, the Trust is asserting claims that must be determined by reference to the Agreement. While the Petition does not specifically address the Agreement or various account applications, it extensively discusses the alleged misrepresentations made by E*Trade in the course of providing brokerage services. The Agreement bears directly on Plaintiffs' claims

16

against E*Trade in this litigation. This Court must "look past the labels the parties attach to their claims to the underlying factual allegations." *Reid*, 701 F.3d at 848 (citation omitted). The Trust cannot seek extensive damages for claims related to trades executed under the Agreement while disclaiming that it is bound by the Agreement. Because the Trust clearly benefitted from the Agreement and now brings claims directly relating to the Agreement, it is equitably estopped from avoiding enforcement of the incorporated Arbitration Agreement.

### IV.     CONCLUSION

The undisputed facts demonstrate that E*Trade may compel arbitration of Plaintiffs' claims. Hillow is a Trustee of the Trust with authority to act on its behalf by Plaintiffs' admission. In December 2017, Hillow opened the Account and accepted the Agreement, which contains the Arbitration Agreement. Hillow received multiple conspicuous Arbitration Notices in the course of opening the Account and accepting the Agreement. The Arbitration Agreement, which is located at § 12 of the Agreement, specifically binds "all other persons claiming a legal or beneficial interest in the Account." Hillow proceeded to change the Account name to that of the Trust and executed the Trust Application, which also included bolded references to the Agreement and its arbitration provision. In the Trust Application, Hillow affirmed that he had authority to apply for an account on behalf of the Trust. Plaintiffs, including the Trust, then traded millions of dollars' worth of securities on the Platform, which Plaintiffs could only access because they executed the Agreement.

Plaintiffs now insist that the Arbitration Agreement is unenforceable because E*Trade failed to comply with FINRA Rule 2268 and never obtained the Trust's consent. These arguments cannot succeed as a matter of law based upon the undisputed facts before the Court. Plaintiffs have not demonstrated that FINRA Rule 2268 constitutes a contrary congressional

command which can overcome the FAA's liberal policy favoring arbitration. As to the Trust, Hillow explicitly consented to the Agreement on behalf of the Trust when completing the Trust Application. The Arbitration Agreement would even be enforceable against the Trust absent the Trust Application because Hillow placed the Account in the Trust's name and the Trust directly benefitted from the Agreement by extensively trading on the Platform. In these circumstances, the Court finds that both Hillow and the Trust are subject to binding arbitration in accordance with the Arbitration Agreement.

Accordingly,

**IT IS HEREBY ORDERED** that E*Trade's Motion to Stay Proceedings and Compel Arbitration (Doc. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **STAYED** pending completion of such arbitration. The case shall be administratively **CLOSED**, and the parties shall file a Joint Status Report with the Court within **thirty (30) days** of the completion of arbitration.

Dated this 20th day of April, 2022.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE